**W. F. MAXWELL, an Individual and W. F. Maxwell, Inc., a Corporation, a Copartnership, Doing Business as W. F. Maxwell Company**

v.

**The UNITED STATES.**

**No. 392–58.**

United States Court of Claims.

Jan. 12, 1962.

Samuel S. Gill, Los Angeles, Cal., for plaintiff. Thelen, Marrin, Johnson & Bridges, Los Angeles, Cal., were on the brief.

Carl Eardley, Washington, D. C., with whom was William H. Orrick, Jr., Asst. Atty. Gen., for defendant.

DARR, Senior District Judge, sitting by designation.

The plaintiff calls on this court for an award of damages against the defendant resulting from breaches of a contract which provided for the construction of a flood protection channel in the City of Los Angeles, California.

The facts, as found below, are well summarized in the defendant's brief and this summation, with some additions and omissions, will be used.

The Soil Conservation Service (SCS) entered into a cooperative agreement with the Los Angeles Flood Control District (District) for the paving of a flood control channel 7,600 feet long following, in general, Bull Creek in San Fernando Valley, California. The District was to provide all rights of way, the SCS was to contract for and supervise construction.

The channel traversed three streets, and certain utilities, (the water mains insofar as this action is concerned) were

imbedded in the existing bridge structures. These bridges were to be removed and replaced, and during construction the utilities were to be relocated in earth detours. The Department of Water and Power of the City of Los Angeles (DWP) owned the water mains and it was, of course, necessary to make relocations before new bridge construction could get underway.

The contract for channel paving and bridge construction was awarded to plaintiff in June 1955, and the plaintiff promptly commenced work, since it was obligated to complete by December 10, 1955. The plaintiff considered it feasible and less expensive to begin work on the removal and replacement of the bridges, which necessitated immediate removal of the utilities. The removal of the utilities was delayed, the work not starting until August 9, and plaintiff's contract period was extended forty-four (44) days by reason of this delay. The relocation work was finished by August 25, and thereafter plaintiff had no further interruptions until October 3, at which time a Teamsters strike began and continued until January 1, 1956. By reason of the Teamsters strike, the plaintiff was prevented from securing aggregates for its concrete, and this virtually shut down the job. Because of this delay, plaintiff received a seventy-one (71) day extension of time.

Under ordinary circumstances, fall rains in the San Fernando Valley came about the middle of October, however, in 1955, the first fall rain occurred about November 14, to the extent of 0.94 of an inch, causing damage to the slopes which were about 95% excavated. In order to expedite the work, the defendant agreed on December 13, 1955 (during the strike period), to underwrite plaintiff's additional expenses in securing aggregates from sources not affected by the Teamsters strike, and thereafter plaintiff's work proceeded without interruption.

On January 25, 1956, a storm broke which lasted three (3) days and deposited over six (6) inches of rain in the area, with severe damage to the unpaved channel. Plaintiff completed the job in April 1956, without further incident, and within the contract period, as extended.

By this suit plaintiff seeks to recover the cost of repairing flood damage. Plaintiff contends that the utility delay in July and August was a breach of contract and pushed the plaintiff's work into wet weather. The plaintiff also contends that the defendant by change order switched at one location from catch basins to spillways, that this change contributed to the damage caused by excessive rains, and that the Government is liable because the revised design was defective.

The plaintiff makes certain other relatively minimal claims that will be later considered.

Whether there was an obligation upon the Government to remove and replace the utilities depends upon the construction of the contract and the interpretation of a letter written to plaintiff by the defendant's Project Engineer dated June 8, 1955. The pertinent part of the contract is:

> " * * * all utilities will be relocated, altered, or reconstructed by the respective owners. The Government will conduct or arrange for such negotiations with the owners in respect to such work and the work will be done at no cost to the Contractor."

Pertinent portions of the letter are that,

> "Previous arrangements have been made with the owners of subsurface utilities which interfere with the construction at the job sites. These utility owners are currently completing their plans for those relocations. The respective owners should be ready to make the necessary relocations by the time your construction in the detour fills has progressed to the point which will permit installation of the temporary pipelines."

The purport of the provisions in the contract and in the letter are clear and unambiguous.

In the contract the Government agrees to conduct or arrange for negotiations with the owners for the removal and relocation of the utilities; nothing more, nothing less. The letter informed the defendant that the result of negotiations with the owners was that the owners had made arrangements and plans to remove the pipelines in time to prevent interference with plaintiff's work. The Project Engineer did not inform the plaintiff that the pipelines would be removed, but that the owners "should be ready to make the necessary relocations", etc.

No one could err in determining the meaning of the contract. The utility owners were to remove and relocate the water system without cost to the plaintiff. The Government did "conduct or arrange" for such negotiations with the owners. Obviously at the time of the making of the contract the parties did not anticipate trouble with the removal of the utilities. The whole program was for the benefit of the City of Los Angeles and the City of Los Angeles was the owner of the utilities. It could not have been foreseen that a beneficiary would hinder or delay the consummation of a benefaction.

The letter of June 8, 1955, simply tells the plaintiff that the defendant is carrying out its part of the bargain by what appeared to be successful negotiations concerning the removal and relocation of the utilities.

Further evidence in the case indicates that the Government continued to be diligent in trying to have the pipelines removed and in fact Mr. Maxwell admits that the Government made all effort to do so.

■ The Government was not responsible for the delay resulting from the failure to timely remove and relocate the utilities. The plaintiff's suit fails upon this claim.

The original design at all street approaches to the bridge sites called for the installation of catch basins. However, Devonshire Street was a State highway and the cost of such betterments had to be paid for by the State of California. The State wanted less expensive drainage, and required the construction of spillways in place of catch basins. This change was ordered by defendant in July 1955, without protest by plaintiff. The change order was not executed until January 1956. The spillways not having been built until after the damage complained of occurred, whether insufficient or not, could not have caused the damage.

■ However, plaintiff argues that if the arrangements had been by catch basins, in the normal course of work these would have been constructed when the rains came and the damage avoided. The unforeseen results caused by the heavy rains was a fortuitous happening for which the defendant cannot be penalized.

The plaintiff claims delay by reason of error made by the Government's surveyors in placing work-guiding stakes. The proof is quite indefinite as to the length of delay and as to any damages resulting therefrom. Actually the record discloses that plaintiff is not making a claim for this error.

Another wrong claimed by the plaintiff is that defendant refused to allow plaintiff to build temporary bridges and to remove the earth detours, as requested in November 1955. This request came when the Teamsters strike was on and the progress of the work greatly impaired. Both parties were making vigorous effort to forward the work. To this end, the defendant undertook to pay plaintiff for extra cost incurred in securing aggregates and to pay for double shifts. The request to build temporary bridges and to remove earth detours was in the nature of a suggestion by which the work might go forward, but in view of other arrangements, the suggestion was mutually abandoned.

■ The plaintiff further claims a negligent act by the defendant in failing to issue a stop order when the rains came and defer resumption of work until April 1956. It is clear, however, that in the public interest the defendant was justi-

fied in declining this request and no wrong can be charged for this action.

Doubtless the plaintiff lost money on this venture, but the fault seems to lie in the failure of DWP in removing the utilities after promising to do so, the Teamsters strike, the extraordinary heavy floods and some want of diligence on the part of the plaintiff.

The defendant did not directly breach the contract nor was the contract impliedly breached by reason of defendant's negligence.

The petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE and WHITAKER, Judges, concur.